IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LOCKHEED MARTIN CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>HOWMET AEROSPACE INC. and RTI ADVANCED FORMING, INC.,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff Lockheed Martin Corporation ("Lockheed Martin"), by and through undersigned counsel, for its Complaint against Howmet Aerospace Inc. and RTI Advanced Forming, Inc., alleges as follows:

1. Lockheed Martin is a global aerospace and security company principally engaged in the research, design, development, manufacture, integration, and sustainment of advanced technology systems, products, and services.

2. Lockheed Martin is one of our nation's largest defense contractors, providing the United States government with military equipment and services used to ensure the country's national security and foreign policy objectives. Under various contracts with the U.S. government, Lockheed Martin supplies aircraft, helicopters, missiles, defense systems, and other equipment that the military uses on a daily basis to defend our country and its allies.

3. Lockheed Martin operates in four business segments. Of relevance here is Lockheed Martin's Aeronautics division, based in Fort Worth, Texas, which designs and manufactures numerous aircraft for the U.S. military, including the F-35 Lightning II Joint Strike Fighter ("F-35"), a fifth-generation stealth, supersonic fighter jet that is among the most advanced military aircraft ever built. It has a top speed of Mach 1.6—about 1,217 mph.

4. In 2001, after a competitive bidding process, the Department of Defense awarded Lockheed Martin the prime contract to produce F-35s for the U.S. military. After years of laborious design, development, and testing, Lockheed Martin delivered the first production F-35 to the U.S. government in 2011, and the U.S. Marine Corps declared the F-35's initial operational capability in July 2015, followed by the U.S. Air Force in August 2016 and the U.S. Navy in February 2019.

5. The F-35 is a centerpiece of the U.S. military's current and future national defense program; indeed, the government's current F-35 inventory objective is to obtain 2,456 aircraft by the mid-2030s. Because of the unparalleled, advanced technology and advantages that the F-35 provides our military fighter pilots, and the urgent need for the Department of Defense to obtain as many of these jets as soon as possible, in 2001 the President of the United States invoked his authority under Title 1 of the Defense Production Act of 1950, 50 U.S.C. § 4501 et. seq., to designate Lockheed Martin's F-35 contract as a priority national defense contract under the Defense Priorities and Allocations System ("DPAS"), now codified at 15 C.F.R. Part 700.

6. The Defense Production Act was enacted shortly after World War II, to ensure that contractors supplying products to the Department of Defense in a time of heightened or emergency military need give priority to performing such contracts over all their other contracts and obligations, including to commercial (non-military) customers. Thus, when the President assigns a military supply contract a priority rating under DPAS (referred to as a "DPAS-rated" contract), all contractors participating in the program—both the prime contractor and all subcontractors—must prioritize their obligations to supply under their respective contracts, to meet the delivery deadlines in the contracts.

7. Compliance with the Defense Production Act and DPAS regulations is considered so critical that willful violation of either is a crime under 50 U.S.C. § 4513 and 15 C.F.R. § 700.74(a), punishable by imprisonment and a fine. A contractor also may be subject to suspension or debarment from federal government contracting as a consequence of a violation.

8. Reflecting its importance to our nation's military, the F-35 program is currently Lockheed Martin's largest program, representing 27% of Lockheed Martin's total consolidated net sales in 2022. Many NATO and allied country participants have also ordered F-35s from Lockheed Martin.

9. The construction of an F-35 requires thousands of parts and assemblies. Therefore, as is typical in major defense contracts, Lockheed Martin has signed subcontracts with over a thousand companies to produce component parts needed to build and supply F-35s to the U.S. government on a timely basis, in accordance with the program's DPAS rating and the delivery schedules Lockheed Martin agreed to in the prime contract.

10. One of Lockheed Martin's subcontractors for the F-35 program is Howmet Aerospace Inc. and its affiliates. Howmet is a large, publicly traded company based in Pittsburgh, Pennsylvania with over $5.6 billion in annual sales and a market capitalization of over $20 billion. It specializes in manufacturing and supplying lightweight metal components and systems for the aerospace industry, including to military defense contractors. Among the engineered products it supplies are titanium materials used to construct aircraft, such as titanium sheets, plates, bars, and ingots.

11. Howmet Aerospace Inc. is the ultimate corporate owner and successor in interest to RTI Advanced Forming, Inc. ("RTI") and RTI International Metals, Inc., which in 2002 signed the initial subcontract with Lockheed Martin for the supply of certain titanium materials for the F-35 program; RTI signed the December 2018 amendment to that contract, incorporating the terms of the prior contracts and containing the "Right to Buy" clause discussed herein. And after Howmet Aerospace Inc. acquired RTI in 2020, it signed subsequent amendments to the contract in its own name. Howmet Aerospace Inc. and RTI are referred to collectively below as "Howmet."

12. Lockheed Martin's subcontract with Howmet contains a "Right to Buy" provision, under which Lockheed Martin's other subcontractors, which build component parts for the F-35 that require titanium materials, have the right to buy those materials from Howmet at the same

3

prices and under the same terms as Lockheed Martin. Howmet must satisfy purchase orders from those other subcontractors at the prices specified in the Lockheed Martin-Howmet subcontract.

13. Because Lockheed Martin's prime contract is DPAS-rated, under federal law Lockheed Martin must designate all of its F-35 subcontracts (and purchase orders issued thereunder) as DPAS-rated. Thus, purchase orders Lockheed Martin has issued under its subcontract with Howmet are DPAS-rated, and Lockheed Martin required its subcontractors ordering titanium materials from Howmet to designate their purchase orders as DPAS-rated as well.

14. For almost 20 years, Howmet, through its subsidiaries and affiliates, has been supplying Lockheed Martin and other Lockheed Martin subcontractors with the titanium materials called for under the subcontract. In November 2023, however, Howmet communicated to Lockheed Martin and to certain Lockheed Martin subcontractors that it would stop supplying these materials at the prices specified in the subcontract, and instead demanded that Lockheed Martin and those other subcontractors agree to a massive price increase in order for Howmet to continue to perform.

15. Later in November 2023, Howmet followed through on its threats and began breaching the subcontract, by failing to deliver titanium materials to certain Lockheed Martin subcontractors that manufacture F-35 components where the titanium materials are needed.

16. Despite Lockheed Martin's notices to Howmet that Howmet is breaching the subcontract and its reminders to Howmet that the purchase orders issued pursuant to the subcontract are DPAS-rated, Howmet has stated unequivocally that it will no longer perform its obligations under the subcontract, and will continue to breach them, unless Lockheed Martin and/or the other Lockheed Martin subcontractors agree to renegotiate and substantially increase the prices specified in the subcontract – even though the subcontract states that even if there are disputes between the parties, while those disputes are being discussed or resolved Howmet "shall diligently proceed with the performance of this Contract as directed by LOCKHEED MARTIN."

17. Given Howmet's willful breaches and its statements that it will continue to willfully breach, and the fact that the F-35 prime contract and the subcontract purchase orders at issue are DPAS-rated, Lockheed Martin brings this action for:

(i) a declaratory judgment that Howmet is required to perform under the subcontract, and fulfill purchase orders issued pursuant to the subcontract, at the prices stated in the subcontract;

(ii) temporary and immediate injunctive relief, including a temporary restraining order and a preliminary injunction, to require Howmet to perform its obligations under the subcontract, and fulfill purchase orders issued pursuant to the subcontract, on a timely basis; and

(iii) other forms of relief as stated herein.

## PARTIES

18. Plaintiff Lockheed Martin is a corporation organized under the laws of the State of Maryland with its principal place of business in the State of Maryland. Lockheed Martin engaged in business with Howmet through Lockheed Martin Aeronautics, one of its four major business segments, which is headquartered in Fort Worth, Texas.

19. Defendant Howmet Aerospace Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Pittsburgh, Pennsylvania, and may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

20. Defendant RTI Advance Forming, Inc. ("RTI") is a corporation organized under the laws of the State of Missouri with its principal place of business in Washington, Missouri, and may be served with process by serving its registered agent, CT Corporation System, 120 South Central Ave., Clayton, MO 63105.

## JURISDICTION

21. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because (i) the damages sought, and the value of declaratory and injunctive relief sought and the extent of the

injury to be prevented, each exceed the sum of $75,000, exclusive of interest and costs; and (ii) the parties are citizens of different states.

22. Howmet is subject to personal jurisdiction in this District because, among other things, it has purposely availed itself of the benefits and protections of Texas's laws, including in connection with the contract at issue, such that it should reasonably anticipate being haled into court here. Upon information and belief, Howmet Aerospace Inc.: has offices throughout the State of Texas, including multiple offices within this District, staffed with employees who are involved in Howmet's performance under the contract at issue; is qualified to do business in the State of Texas; and has appointed a registered agent for service of process in the State of Texas. Upon information and belief, Howmet employees, including those with responsibilities related to the contract at issue, are located within the State of Texas, including within this District.

23. Howmet and/or its subsidiaries or affiliates have routinely entered into contracts related to the production of materials which Howmet knows and intends will be delivered to this District. Indeed, the object and purpose of the contract at issue is to supply materials for use in the manufacture and assembly of F-35 aircraft by Lockheed Martin in this District, whether by shipping materials directly to facilities in this District or by shipping materials to other Lockheed Martin subcontractors for their use in manufacturing components that Howmet knows will be shipped to this District.

24. In addition, Howmet Aerospace Inc. has previously engaged in litigation in this District, does not contest personal jurisdiction, and has purposely availed itself of the rights and benefits of this Court by seeking to remove state-court actions to this District. *See, e.g.*, *Bryant v. Howmet Aerospace Inc.*, C.A. No. 7:18-cv-00180-BP (N.D. Tex.); *Holsinger v. Howmet et al.*, 7:19-cv-00105-O (N.D. Tex.).

25. Venue is proper in this District pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events giving rise to the claim took place in this District. Many of the events and meetings described herein took place at or near Lockheed Martin's offices in this District. And as stated above, the object and purpose of the contract at issue is to supply materials for use

in the manufacture and assembly of F-35 aircraft by Lockheed Martin in this District, whether by shipping materials directly to facilities in this District or by shipping materials to other Lockheed Martin subcontractors for their use in manufacturing components that Howmet knows will be shipped to this District.

26. The contract at issue between Lockheed Martin and Howmet is governed by the laws of the State of Texas, which is the state from which Lockheed Martin issued it. Negotiation of the contract at issue, at times, took place in person within this District. Requests for Proposals issued pursuant to the contract at issue originated from this District, and upon information and belief, are coordinated by a Howmet employee who resides in this District.

27. Because the manufacture and assembly of F-35 aircraft takes place within this District, Lockheed Martin and Howmet conduct in-person business meetings, typically quarterly, within this District.

**FACTUAL ALLEGATIONS**

28. In 2001, the U.S. government awarded Lockheed Martin the contract to design, develop, test, and supply F-35 aircraft for use by various branches of the military. The contract is DPAS-rated, reflecting the high priority of the military to secure F-35s for operational use as quickly, and with as little disruption, as possible.

29. The F-35 is the newest generation stealth, supersonic fighter jet that has advanced technology (weapons, communications, and navigation) systems. It is used by three branches of the U.S. military and is expected to be one of the backbones of the military's national defense operations for many years to come. A short video of the F-35 in operation, a description of its capabilities, and a timeline of its development and production can be found at https://www.lockheedmartin.com/f35/about/5th-gen-capabilities.html.

30. Lockheed Martin delivered the first production F-35 to the U.S. government in 2011, and the U.S. Marine Corps declared the F-35's initial operational capability in July 2015, followed by the U.S. Air Force in August 2016 and the U.S. Navy in February 2019. To date, Lockheed Martin has delivered more than 975 F-35 aircraft to the U.S. government, and has a goal

to deliver approximately 156 aircraft per year through 2032. The U.S. government's current target inventory for F-35s is 2,456 aircraft.

31. Lockheed Martin's contracts with the U.S. government (and associated amendments and purchase orders) for specified lots of F-35s each have firm delivery schedules.

32. Among the thousands of components needed to manufacture the F-35 are various parts (for example, sheets, plates, or bars) made of titanium, a strong but lightweight metal often used in aerospace applications. Titanium is an essential material to build F-35s. Pursuant to the Buy America Act, Lockheed Martin must purchase titanium from an American company or other limited qualifying sources; as a result, the potential sources of supply are limited. Lockheed Martin thus evaluated potential subcontractors to supply the titanium materials to be used in manufacturing the F-35.

33. On July 1, 2002, Lockheed Martin executed a long-term Master Purchase Order subcontract with RTI International Metals, Inc. for the supply of titanium parts. The contract was subsequently amended on December 18, 2018 ("Right to Buy Contract"), and signed by RTI. Through a series of corporate transactions, RTI later was acquired by Howmet Aerospace Inc., and that company signed subsequent amendments to the Right to Buy contract on behalf of itself and RTI.

34. The Right to Buy Contract is a type of "requirements contract," meaning that Howmet promised to supply as many of the titanium materials identified in the contract as were requested by Lockheed Martin or its subcontractors, on demand, with Lockheed Martin being obligated to purchase from Howmet only a specified amount of titanium material (the amount has varied over time) that Lockheed Martin and its subcontractors actually ordered during each year of the contract. The purchases were to be made pursuant to purchase orders issued by Lockheed Martin or subcontractors of Lockheed Martin that needed these titanium materials to manufacture F-35 component parts and structures that they were providing Lockheed Martin.

35. The Right to Buy Contract contains a number of provisions relevant to this Complaint, including:

8

a. Howmet agreed to supply as many of specified titanium materials as were requested by Lockheed Martin or its other subcontractors to construct components for F-35s, for a specified term of years (which the parties have extended over time);

b. Howmet agreed that Lockheed Martin subcontractors on the F-35 program have a "right to buy" from Howmet under the terms of the Right to Buy Contract, by issuing purchase orders to Howmet, and Howmet "shall" fulfill those purchase orders at the prices specified in the Right to Buy Contract;

c. The prices for the various materials to be supplied by Howmet and purchased by Lockheed Martin or its subcontractors are expressly set forth in the Right to Buy Contract. To account for potential changes in Howmet's costs of raw materials over the term of the contract, the contract includes price escalation and de-escalation clauses, through which the price Lockheed Martin and its subcontractors pay Howmet can increase or decrease based on published price indices relevant to the titanium market;

d. Lockheed Martin has the right to terminate the Right to Buy Contract, either for default or for convenience, under specified conditions, whereas Howmet has no right to terminate;

e. Given that Lockheed Martin's prime contract with the U.S. government is DPAS-rated, Howmet agreed that the Right to Buy Contract "is a 'rated order' certified for national defense … and [Howmet] shall follow all the requirements of the Defense Priorities and Allocation System Regulation (15 C.F.R. Part 700)."

f. Howmet agreed that "timely performance is a critical element of this Contract," and if Howmet "becomes aware of difficulty in performing" under the Right to Buy Contract it must notify Lockheed Martin in writing, but "This notification shall not change any delivery schedule."

  g. The parties agreed that any disputes under the subcontract "may be decided by recourse to an action at law or in equity," but "until final resolution of any dispute hereunder, [Howmet] shall diligently proceed with the performance of this Contract as directed by LOCKHEED MARTIN."

36. For almost twenty years, Howmet and its predecessors have supplied titanium materials to Lockheed Martin and Lockheed Martin's other subcontractors under the terms of the Right to Buy Contract. The parties have negotiated many amendments to the subcontract, including amendments to the pricing provisions.

37. In late 2022, Howmet began complaining to Lockheed Martin that its costs of obtaining titanium raw materials allegedly had increased substantially due to market conditions, and requested that Lockheed Martin agree to renegotiate the Right to Buy Contract to include substantial price increases for Howmet. Lockheed Martin had several discussions with Howmet, requesting documentation and substantiation of Howmet's alleged substantial increases in costs, and also requested that Howmet indicate whether it was still making a profit under the contract. Lockheed Martin explained that because this is a government subcontract, it could not simply agree to price increases, but rather needed to have appropriate documentation so that it could communicate with the Department of Defense about any proposed increases, and get any required government approvals.

38. Howmet did not provide the requested documentation, and Lockheed Martin thus did not agree to amend the contract to include the price increases Howmet was requesting. In October 2023, Howmet provided some (albeit insufficient) documentation of its alleged need for price adjustments, and notified Lockheed Martin by letter of its demand to amend the Right to Buy Contract. It also threatened that it would stop supplying titanium materials under the Right to Buy Contract if Lockheed Martin did not agree.

39. Lockheed Martin refused to agree to Howmet's extortionate demands. Lockheed Martin reminded Howmet that timely performance is required under the Right to Buy Contract (even in the face of a contract dispute), that purchase orders issued pursuant to it are DPAS-rated,

and therefore that Howmet is required by federal law to prioritize supply of titanium materials for the F-35 program over sales of such materials to its commercial customers (for example, commercial airlines), even if Howmet could extract higher prices from those commercial customers.

40. Nonetheless, during a November 22, 2023 telephone call, a Howmet Vice President informed Lockheed Martin that Howmet would not ship any additional titanium materials until either Lockheed Martin or its other suppliers accede to Howmet's price demands.

41. The next day, on November 23, 2023—Thanksgiving Day—Howmet demanded that Lockheed Martin "immediately accept" the price increases Howmet had previously proposed, plus additional adjustments and escalation clauses to the pricing terms of the Right to Buy Contract. Howmet has stated that it does not intend to further perform under the Right to Buy Contract, or to fill purchase orders issued pursuant to the contract, unless and until Lockheed Martin and/or it subcontractors agree to its price demands, either globally or in connection with specific purchase orders.

42. Howmet has made similar threats and demands to Lockheed Martin's suppliers who issue purchase orders to Howmet for titanium materials pursuant to the Right to Buy Contract. For example, on November 7, 2023, Howmet sent a letter to BAE Systems—a key Lockheed Martin supplier on the F-35 program—stating that, because Howmet was facing higher costs for titanium material, it was unilaterally "implementing a new price" for "all new and previously acknowledged titanium orders starting on November 10, 2023." Days later, on November 13, 2023, Howmet sent another letter to BAE threatening to unilaterally "cancel" _all_ outstanding BAE purchase orders issued pursuant to the Right to Buy Contract, which are DPAS-rated, unless BAE accepted Howmet's price demands. On November 17, 2023, BAE informed Lockheed Martin that Howmet had failed to make a scheduled delivery under a DPAS-rated purchase order earlier that week, indicating to BAE that Howmet had already ceased the supply of titanium material to BAE.

43. Other Lockheed Martin suppliers have received similar demands and threats from Howmet.

44. Howmet's breaches of the Right to Buy Contract to date include the failure to fulfill purchase orders that Lockheed Martin's subcontractor BAE Systems issued to Howmet under the Right to Buy Contract.

45. Howmet's breaches are willful violations of the DPAS regulations to which it agreed in the Right to Buy Contract to be bound.  The DPAS regulations require a contractor receiving a DPAS-rated purchase order (such as the orders Howmet has received for titanium materials in connection with the F-35 contract) to "give them preferential treatment," "schedule [the order] to the extent possible to ensure delivery by the required delivery date," "accept every rated order received and [] fill such orders regardless of any other rated or unrated orders that have been accepted," and "schedule operations, including the acquisition of all needed production items, in a timely manner to satisfy the delivery requirements of each rated order."  15 C.F.R. §§ 700.3(b) & (c), 700.13(a), 700.14(a).  In addition, the contractor "shall not discriminate against rated orders in any manner such as charging higher prices or by imposing different terms and conditions than for comparable unrated orders."  *Id.* § 700.13(b).

46. Howmet has breached all of these obligations, and stated that it intends to continue to do so unless it is paid higher prices than called for under the Right to Buy Contract.  Because these breaches are willful, Howmet's refusals to supply under DPAS-rated purchase orders issued pursuant to the contract are criminal acts under the Defense Production Act and the DPAS regulations.

## COUNT I
## (BREACH OF CONTRACT)

47. Lockheed Martin realleges and incorporates allegations in paragraphs 1–46, as though fully set forth herein.

48. The Right to Buy Contract between Lockheed Martin and Howmet is a valid, binding, and enforceable contract, and Howmet has accepted the benefits of the contract for many years.

49. Howmet has breached the contract by failing to fulfill valid purchase orders issued to Howmet by at least BAE Systems, and perhaps other Lockheed Martin subcontractors, pursuant to the contract.

50. To the extent Howmet claims that Lockheed Martin has breached the contract, any such breaches do not excuse Howmet's performance under the contract, including because the contract and purchase orders issued to Howmet thereunder are DPAS-rated, requiring Howmet to perform, and because the contract provides that Howmet must continue to perform even if the parties have disputes under the contract.

51. As a result of Howmet's breaches, the Court should order specific performance, and enter judgment ordering Howmet to fulfill all purchase orders issued (either by Lockheed Martin or Lockheed Martin's subcontractors) pursuant to the Right to Buy Contract that Howmet has refused to fulfill, at the prices set forth in the Right to Buy Contract.

52. In the alternative, Howmet's current breaches have caused damages to Lockheed Martin, in an amount to be proven at trial, and those damages will increase with each breach of the contract that Howmet has threatened will occur.

## COUNT II
## (DECLARATORY JUDGMENT)

53. Lockheed Martin realleges and incorporates allegations in paragraphs 1–52, as though fully set forth herein.

54. This Count is for a declaratory judgment under 28 U.S.C. § 2201.

55. Howmet has unequivocally represented to Lockheed Martin that it will not perform under the Right to Buy Contract, and will continue to refuse to fulfill purchase orders issued under the contract (either by Lockheed Martin or its other subcontractors), unless Lockheed Martin and/or its subcontractors agree to renegotiate the price terms and pay Howmet higher prices than required in the contract.

56. Therefore, pursuant to 28 U.S.C. § 2201, an actual, substantial, justiciable controversy within this Court's jurisdiction exists between Lockheed Martin and Howmet, regarding whether Howmet must comply with the Right to Buy Contract and supply titanium materials in accordance with purchase orders issued to it. The parties' dispute on this subject is of sufficient immediacy to warrant the issue of a declaratory judgment.

57. A declaratory judgment would serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to this action.

58. Therefore, Court should enter a declaratory judgment that Howmet's refusal to comply with any purchase order issued pursuant to the Right to Buy Contract, whether by Lockheed Martin or Lockheed Martin's subcontractors, on the grounds that the prices specified in the contract are too low is a breach of the contract and those purchase orders, and that Howmet must fulfill any such purchase order at the prices set forth in the Right to Buy Contract.

## COUNT III
## (INJUNCTIVE RELIEF)

59. Lockheed Martin realleges and incorporates allegations in paragraphs 1–58, as though fully set forth herein.

60. Lockheed Martin is entitled to preliminary and permanent injunctions from this Court directing that Howmet specifically perform its obligations under the Right to Buy Contract, including fulfilling (a) all outstanding purchase orders issued pursuant to the contract, whether by Lockheed Martin or Lockheed Martin's subcontractors, at the prices specified in the contract, including outstanding BAE Systems purchase orders that Howmet has refused to fulfill, and (b) any future purchase orders issued pursuant to the contract, whether by Lockheed Martin or Lockheed Martin's subcontractors, at the prices specified in the contract, unless Howmet has some legal basis to fail to perform.

61. Lockheed Martin meets all requirements for preliminary and permanent injunctions. There exists a strong likelihood that Lockheed Martin will succeed in showing that

Howmet's failures to fulfill purchase orders issued pursuant to the contract, on the ground that the prices specified in the contract are (in Howmet's view) too low, are breaches of the contract and those purchase orders.

62. The benefits to Lockheed Martin in obtaining injunctive relief outweigh any potential harm to Howmet, a sophisticated commercial party that voluntarily agreed to the terms of the contract, including the price terms. Lockheed Martin's prime contract with the government to produce F-35s has delivery schedules, and Lockheed Martin's ability to meet those delivery schedules depend in part on Lockheed Martin's subcontractors timely performing their obligations under the subcontracts.

63. Unless the Court issues an injunction requiring Howmet to specifically perform, Lockheed Martin will suffer immediate and irreparable injury, including because: (a) Lockheed Martin's prime contract with the government for the production of F-35s is DPAS-rated and the government has emphasized the need for timely delivery of F-35s for purposes of national defense and security; (b) Lockheed Martin's ability to meet the delivery deadlines in the prime contract depends in part on Lockheed Martin's subcontractors timely performing their own obligations under the subcontracts; (c) F-35s cannot be made without the titanium materials called for in Lockheed Martin's contract with Howmet; and (d) Howmet's refusal to supply titanium materials as required under its contract with Lockheed Martin and purchase orders issued pursuant to the contract threatens to cause substantial delays in Lockheed Martin's construction of F-35s, and therefore substantial delays in Lockheed Martin timely delivering such F-35s to the U.S. military for critical, urgent national security needs, as required by Lockheed Martin's prime contract with the government.

## **PRAYER FOR RELIEF**

WHEREFORE, Lockheed Martin prays for the following:

(a) A temporary restraining order directing that Howmet specifically perform its obligations under its Right to Buy Contract with Lockheed Martin and purchase orders issued pursuant to that contract, including fulfilling (a) all outstanding

    purchase orders issued pursuant to the contract, whether by Lockheed Martin or Lockheed Martin's subcontractors, at the prices specified in the contract, including outstanding BAE Systems purchase orders that Howmet has refused to fulfill, and (b) any future purchase orders issued pursuant to the contract, whether by Lockheed Martin or Lockheed Martin's subcontractors, at the prices specified in the contract, unless Howmet has some legal basis to fail to perform;

(b)   A preliminary injunction directing that Howmet specifically perform its obligations under its Right to Buy Contract with Lockheed Martin and purchase orders issued pursuant to that contract, including fulfilling (a) all outstanding purchase orders issued pursuant to the contract, whether by Lockheed Martin or Lockheed Martin's subcontractors, at the prices specified in the contract, including outstanding BAE Systems purchase orders that Howmet has refused to fulfill , and (b) any future purchase orders issued pursuant to the contract, whether by Lockheed Martin or Lockheed Martin's subcontractors, at the prices specified in the contract, unless Howmet has some legal basis to fail to perform;

(c)   An order that Howmet specifically perform its obligations under the Right to Buy Contract and purchase orders issued pursuant to the contract by fulfilling those purchase orders that Howmet has refused to fulfill, at the prices set forth in the Right to Buy Contract;

(d)   In the alternative, an award of damages to Lockheed Martin caused by Howmet's breach of Howmet's obligations under the Right to Buy Contract and purchase orders issued pursuant to the contract, in an amount to be proven at trial;

(e)   A declaratory judgment that Howmet's refusal to comply with any purchase order issued pursuant to its Right to Buy Contract with Lockheed Martin on the grounds that the prices specified in the contract are too low is a breach of the contract and those purchase orders, and that Howmet must fulfill any such purchase orders;

(f) An award to Lockheed Martin of its attorney's fees, costs, and expenses incurred in connection with this action, plus pre-judgment and post-judgment interest; and

(g) Any other relief that the Court deems just and proper.


Dated: November 30, 2023

Respectfully submitted,

By: /s/ Micah R. Prude
Micah R. Prude
State Bar No. 24051216
Sara Babineaux
State Bar No. 24125102

HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

E-mail: micah.prude@hklaw.com
E-mail: sara.babineaux@hklaw.com

Joseph G. Petrosinelli (*pro hac vice* appl. forthcoming)
Christopher J. Mandernach (*pro hac vice* appl. forthcoming)
Kimberly Broecker (*pro hac vice* appl. forthcoming)

WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:  (202) 434-5000
Facsimile:   (202) 434-5029

E-mail:  jpetrosinelli@wc.com
E-mail:  cmandernach@wc.com
E-mail:  kbroecker@wc.com

*Attorneys for Plaintiff
Lockheed Martin Corporation*

17